The case just argued will be submitted. And we'll proceed to hear argument in the next case on calendar for argument, which is 25-675, United States v. Douglas, Dar Malatare. And we will hear first from Ms. Musick. You may proceed when you're ready. Good morning, Judge Collins, Judge Forrest, and Judge Fitzwater. May it please the court, my name is Elizabeth Musick, and I represent the defendant and appellant, Douglas Darin Malatare, along with my co-counsel, Paul Gallardo, who cannot be here today due to military training. We also represented Mr. Malatare at the district court level. I'd like to reserve two minutes of my time for rebuttal, if I may, Your Honors. Mr. Malatare has raised three issues on appeal. He appeals the admission of Government Exhibit 30 at trial, which consisted of a string of text messages between Mr. Malatare and the decedent, Sean Weypert. He appeals the denial of his Rule 29. On the issue of the text messages, so your position is that they were hearsay with respect to the side of the conversation of the decedent. Correct. What is the attestation for which it's being offered for the truth of the matter? What was the decedent saying? What is the truth of the matter that they were offered for? Well, the government would have the court believe that the text messages... You're the one objecting to them, so obviously you think some assertion is being made in those, and you don't want that in because, you know, that is a hearsay statement. So tell me what the assertion is that's in the text message that you think violates the hearsay rule. Of course, Your Honor. It's specifically the decedent's statement, I can only afford a half. So that was introduced in order to show that he was really poor? No, Your Honor, that was introduced for the purpose of showing that a half was actually meant to be a half a pill of fentanyl. But that language... Somebody else testified that a half in the community was understood to mean half a pill. That just says that he, you know, made this statement. Well, actually, Your Honor, what's interesting is that at trial, the government did call a young lady named Jane L. Davis, who was a former drug user, and she testified specifically that the language a half would refer to methamphetamine, not fentanyl. Well, I mean, the prosecutor seemed to have misspoken in framing the question, and nobody caught it at the time. That may be, but that's what the court record shows. I mean, but that's a reasonable reading of the record that, you know, the jury could have had and that we could have had, that it was a slip of the tongue. It could have been, Your Honor. But our argument... I mean, the whole case, you know, was about fentanyl, there's some discussion of marijuana, but it's all about fentanyl. And then all of a sudden, there's one word stuck in there. But still, what is the statement that is being introduced for the truth of the matter that you think needs to be... What's the assertion of fact being made? The government is trying to assert that a half means fentanyl, therefore, that the parties were engaging in a conversation that amounted to a contract to buy and sell drugs. So if I call Best Buy and say, I would like to buy a refrigerator, is that a statement of fact? Am I asserting something? I mean, aren't offers and acceptances just viewed as being verbal acts and not even hearsay at all? I think the difference is that in order for this fact statement to come into evidence, it would have to be a statement against penal interest, Your Honor. And our argument is that the statement, I can only afford a half, is not a statement against penal interest because it can be interpreted a number of different ways. Your Honor, in your scenario, I would like to purchase a refrigerator. There aren't too many other ways to interpret that. If I say I'd like to purchase a fentanyl pill, that's clearly against penal interest, isn't it? It would be, Your Honor, but that's not what the decedent said. It's just a question of foundation then. You know, we don't expect that people who are negotiating drug deals will be as explicit as I just was and frequent that they use code. So then you have a foundational issue. You need to lay a foundation. And that's exactly what the district court did here, require the foundation to be laid that that was what the language referred to. And then it's a drug deal, and then it's a statement against interest. Why did the court abuse its discretion on that conclusion? Well, Your Honor, the purpose against the rule against hearsay is that secondhand statements that are represented out of court are inherently unreliable. And that's why the court seeks to not allow them, absent several exceptions to the rule against hearsay. And the statement, a half, can be interpreted a number of different ways. It's an inherently unreliable statement. During the trial, we argued repeatedly that there was ample evidence that our client, Mr. Malaterre, was also perhaps selling marijuana. The phrase, I can only afford a half if you can stop by, could also apply to marijuana rather than fentanyl. However, if it did apply to marijuana, it would not be a statement against interest because we also elicited testimony at trial from agents who testified that because marijuana is legal under state law in Montana, albeit not federal law, that the agents, both federal and local, do not have an interest in pursuing prosecutions in cases involving marijuana. The agent specifically testified that he has seen as much as 10 pounds of marijuana and has submitted a request for prosecution and was told that charges would not be pursued against that individual. And so if the statement, I can only afford a half if you can stop by, actually refers to, say, a half a gram of marijuana or half an ounce. Well, that goes back to Judge Collins' foundation question of, was there anything in this record that the district court would look at and think that that statement was referring to  I think that there could be, yes, Your Honor. No, no, I'm not asking if there could be. I'm asking if there is. We presented evidence at trial that Mr. Malaterre had distribution quantities of marijuana during the traffic stop and search warrant search of his vehicle. That was found. But what you need here is you need evidence to indicate that this lingo is used in reference to marijuana, not that there was some suggestion that marijuana might have been involved or that he was using or buying or whatever. But this lingo, that's what we're talking about, is referencing marijuana. Is there anything in this record for the district court to think that that was true? There was testimony that this language could apply to marijuana. Where is it in the record? Your Honor, I believe it was actually in the same witness's testimony, Ms. Davis, Janelle Davis. She testified that that language could refer to any number of different types of drugs. I believe she also testified that it could apply to marijuana. We also elicited testimony regarding a scale that was found in the backseat of the vehicle that Mr. Malaterre was driving and the fact that a scale would not commonly be used to measure pills for, say, fentanyl distribution, but would rather be used for a substance like marijuana that is typically weighed. And a half can very much refer to a quantification for marijuana, Your Honor. Well, referring to a statement against penal interest, a three-part test applies in the Ninth Circuit. What element do you maintain is not satisfied by this record? Yes, Your Honor. So the three-part test is that the declarant has to be unavailable and that the statement has to subject the declarant to criminal liability and that corroborating circumstances have to indicate the trustworthiness of the statement. And we are asserting that the statement would not subject the declarant to criminal liability and Special Agent Catherine Donahue from the FBI specifically testified that these text messages would not subject either declarant to criminal liability. Therefore, the second prong of that test fails. And this... You said she didn't really know. I mean, she didn't have... She was there introduced for a limited purpose, correct? She was there specifically for the purpose of laying the foundation and admission of the text messages.  And did she have experience in drug investigations? Your Honor, I believe she testified that her experience was primarily in violent crimes. However, she sees all number of different crimes. Wasn't called for that purpose and wasn't really qualified to answer it and said she just didn't know. She said that she could not say for certain what the text messages meant. She would only be able to speculate. And she said that the text messages would not subject either declarant to criminal liability. Okay. You wanted to save some time. I did, Your Honor. All right. Thank you, Counsel. Thank you. All right. We will hear now from Ms. Sable. Did I pronounce that correctly? Sable, Your Honor. Sable. Thank you. All right. Thank you. You may proceed. Good morning, Your Honors. May it please the Court. Kelsey Sable from the District of Montana on behalf of the United States. Your Honors, this Court reviews the admission of this text message evidence for an abuse of discretion. And there is no dispute that the District Court identified the correct law that applies. And so the only remaining question for this Court is whether his application of the facts was illogical, implausible, or without support in the record. So what do you see as the assertion of fact that the declarant is making that would make it a hearsay statement if the exception didn't apply? So Your Honor, we did not argue in the District Court. I understand. But I'm trying to analytically understand. You don't get to a hearsay exception unless you're otherwise hearsay. And I'm trying to understand what was the otherwise hearsay that then we need to see whether there's an exception that covers it. Absolutely, Your Honor. And I don't think that there is. I think, you know, the statement, I can only afford a half if you can stop by, that would absolutely be hearsay if we introduced it for the fact that he can only afford a half. But we did not. I mean, we introduced that statement to show that he was purchasing or obtaining a half a pill of fentanyl from defendant Malaterre. I mean, this is, that's not a statement offered for the truth of his financial situation. This is the offer and acceptance to obtain half a pill of fentanyl. So, you know, I don't know that there is an assertion that's offered for the truth of the matter in this statement. But you haven't argued that. You've argued, you've taken the merits up of the exception that the defense. Correct, Your Honor. And we did that in the District Court, and we do that here. Of course, this Court can affirm on any grounds supported by the record. But we do also think it's clear that this is a statement against penal interest, and the District Court did a very thorough evaluation of this evidence to determine that. And you know, under federal rule of evidence. Any Ninth Circuit case that tells us how to apply the hearsay rules to offer an acceptance in a drug deal, I would think this fact pattern arises, you know, thousands of times. Is there no case on point that tells us how to analyze these vis-a-vis the hearsay rules? We did not find any, Your Honor, with respect to the offer and acceptance specifically. You know, the District Court did reference a case in its order denying the motion for a new trial. We did not cite it in our brief. It's the Nazemian case. The Court references it in excerpts of the record 18, it's 948 Fed 2nd 522. It's not an offer and acceptance case, but I think it's probably the closest factually analogous case that was discussed on this issue. In that case, there was a deceased conspirator who told another co-conspirator in this drug conspiracy that he would not sell to the co-conspirator because the defendant did not pay him for a prior heroin transaction. That's obviously not offer and acceptance, but, you know, this Court talked about how the deceased statements in that case sort of indicated or implied that he was involved in a heroin transaction, which is sort of similar to what we have here. And in Nazemian, we admitted that under the against penal interest. That is correct, Your Honor. So what, I mean, the closest case factually seems to be, it's unpublished, but the Davis case. Well, I think the difference in the Davis case, Your Honor, is, I mean, I think there's two important differences. The first is that the text messages in those cases were admitted under an entirely different rule by the District Court, 801, with respect to the defendant's statements. And there was the discussion of this context issue. The decedent's statements were for context for the defendant's statements. So there was no foundational testimony or evidence that was presented as to what these messages mean, what a G-spot means or why those messages regarding the G-spot were against the declarant's penal interest. And I think another distinction that's very important was the Davis, the Court in the Davis case admitted, I think, 27 sort of logistical or messages going to sort of I'm going here, I'm doing this, or I've arrived here. And those were unquestionably not statements against penal interest. And so that was inappropriate in the Davis case. I would also say the court referred to two of the 27. With the other 25, were they related to the logistics of the transaction, or what were they? They were related to the logistics, Your Honor. There were texts saying, I'm leaving now, or I'm arriving at this place, or I'll see you soon. You know, text messages like those that were related to the logistics of the transaction. And this Court held that the admission of those text messages were not statements against penal interest. So that was inappropriate. And when we can, the admission of those was inappropriate. And when we combine that, Your Honor, with the lack of foundational evidence as to the statements that were arguably against penal interest related to the G-spot, you know, that's a very different situation than we have with these text messages, you know, where we have the foundational testimony, Ms. Davis explaining what are you looking means and I can only afford a half means. I mean, she testified that, you know, I can only afford a half or can I get a half is the way you ask for a half a pill of fentanyl in Browning at this time. She explained- But you have a scenario where Whippet's statements are not being offered for the truth of the matter asserted, but the statements combined with other circumstantial evidence is probative. I think that may be where Judge Collins was going originally. In other words, these two statements are not offered for the truth, but for the making of these statements in combination with other evidence to prove guilt circumstantially. I think that's absolutely correct, Your Honor. I think, you know, if these statements are not made for the truth of the matter asserted, then they're not hearsay and they're admissible if they're authenticated, which they were. And these text messages are circumstantial evidence that Mr. Malaterre and Mr. Whippet arranged for Mr. Malaterre to deliver a half a pill of fentanyl to him on the day that he passed away from a fentanyl overdose. And so these messages combined with the testimony of Mr. Whippet's mother, that Mr. Malaterre was at the house earlier that day, that Mr. Whippet was acting consistently with a fentanyl overdose, the fact that he died of a fentanyl overdose, and the evidence supporting that Mr. Malaterre was dealing fentanyl is more than sufficient circumstantial evidence for a jury to convict Mr. Malaterre of the charge and count one of the indictment. And, you know, I think, Your Honor, again, you know, this comes to this court on an abuse of discretion review. So, you know, even if the court does find that it would not have admitted the text message, it was certainly not illogical or implausible for the district court to interpret them the way that it did based on all of the evidence in the record. And it was certainly not without support that these texts referred to a sale of a half of a pill of fentanyl. And so there was no abuse of discretion here. Do you agree that, I mean, this was fairly critical to your case. Without the text message, this is potentially a Rule 29. I don't know that I do agree with that, Your Honor. I think it's certainly important. It's an important piece of evidence. We said that candidly to the district court. But I think there's a lot of evidence in this case that was important. And even if we don't have, even if Mr. Whippet's text messages were not admitted, Mr. Malaterre's text messages certainly would have been. And based on even just those and all of the other evidence in the record with respect to Mr. Malaterre's drug trafficking and Mr. Whippet's cause of death and Mr. Malaterre's presence at his house earlier that day and the crushed fentanyl pill, I mean, we do believe that there is sufficient evidence for a rational fact finder to find Mr. Malaterre guilty even without these text messages. And if the court has no further questions, we would just respectfully request this court affirm the district court, and I'll cede the remainder of my time. All right. Thank you.  All right. Counsel, we'll hear rebuttal. And since we took you over your time, I'll give you the two minutes you had requested. Thank you, Your Honor. I appreciate that. And Judge Collins, I certainly agree with you that these text messages were extremely crucial to the government's case. The government argued that repeatedly throughout the course of trial. I believe my most memorable quote was that the text messages were a key, albeit a small, albeit key piece of their evidence, which is why they were fighting so hard to get them in. Regarding the case law on this issue, I think the court hit the nail on the head when you questioned, you know, why is there no case law on this issue? Certainly there's something that's more on point. And I, too, could not find anything that was directly on point with our fact pattern, but I did want to point out that some of the seminal cases on this topic, specifically the Williamson case, which was the United States Supreme Court case, it dates back to 1994. And so when this— The response to the Nazamian case that the district court brought up in the new trial that counsel just brought up. So that actually is—I was going to segue into that after I discussed Williamson, but I think my point with talking about the case law is that at the time that these opinions were authored and those cases, you know, went to trial and through the appeal process, text messaging didn't exist. I think that the court was likely contemplating statements that were of an oral nature rather than a written nature. But the rules of evidence treat, you know, oral and written assertions— I agree. However, in this case, the text messages were a very crucial part of the government's case. And by admitting the text messages— But Nazamian does seem to suggest that if you make a statement that in this—the statement itself reflects that you are engaged in drug trafficking, that that statement is against penal interest. And why isn't that here? If an appropriate foundation was laid that the statement is a request for a fentanyl pill, a half a pill, why isn't that by its nature against penal interest? Your Honor, because I think that it has room for interpretation where in the Nazamian case they were specifically talking about a drug debt, which was more clearly inculpatory than the language at issue in this case. I think it was extremely important that these were written statements as well and they were an exhibit that was admitted at trial because the jury got to take that exhibit back with them. They got to look at these text messages throughout their deliberations rather than just having to remember oral testimony from a witness. Thank you, Your Honor.  Thank you, counsel. All right. Thank counsel for your arguments in this case.
judges: COLLINS, FORREST, Fitzwater